*SUPPRESSED*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

JUL – 2 2025

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NACOLE M. TAYLOR, | ) **4:25CR356 MTS/NCC** |
| | ) |
| Defendants. | ) |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

1.      Over the course of the scheme described herein, Defendant NACOLE M. TAYLOR ("TAYLOR") fraudulently obtained hundreds of thousands of dollars in COVID-19 pandemic relief funds for herself and others.  TAYLOR submitted fraudulent applications for relief funds through numerous business entities registered in her name, most of which had little or no operations.  TAYLOR also submitted fraudulent applications for relief funds on others' behalf in exchange for a cut of the relief funds disbursed to those individuals.  TAYLOR then used these funds for personal expenses and purchases of luxury goods.

At all times material to this Indictment, unless otherwise specified below:

### The Defendant and Associated Business Entities

2.      TAYLOR was a resident of St. Louis, Missouri, within the Eastern District of Missouri.  TAYLOR operated a tax preparation business in St. Louis, Missouri under various names, including Accurate Tax, LLC.  At the same time, TAYLOR had numerous other unrelated business entities registered in the state of Missouri under her name.

3. Accurate Tax, LLC ("Accurate Tax"), A&N Logistics, LLC ("A&N Logistics"), Angelic Medical Staffing, LCC ("Angelic Medical Staffing"), Avail Construction, LLC ("Avail Construction"), Friends Are Forever, LLC ("Friends Are Forever"), 4th Generation Home Care Services, LLC ("4th Generation"), Perpetual Investment Group, LLC ("Perpetual Investment Group"), and SquareOne Investment Co. ("SquareOne Investment") were corporations registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, TAYLOR was the registered agent for each of these corporations.

4. TAYLOR was the owner of and signatory for various bank accounts in the names of these corporations, including Regions Bank account ending in -x3974 in the name of A&N Logistics and Regions Bank account ending in -x9849 in the name of 4th Generation.

5. Black Sheep Outfitters LLC ("Black Sheep Outfitters") was a corporation registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, A.L. was the registered agent for Black Sheep Outfitters.

6. Logo Fitness, LLC ("Logo Fitness") and Elite 50 Basketball Training LLC ("Elite 50") were corporations registered with the Missouri Secretary of State. According to documents filed with the Missouri Secretary of State, L.G. was the registered agent for Logo Fitness and Elite 50.

### The Paycheck Protection Program

7. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

2

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), was a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic.

9.      One source of relief provided by the CARES Act was the Paycheck Protection Program ("PPP"), a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

10.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

11.     The types of businesses eligible for a PPP loan included individuals who were self-employed or operated as a sole proprietorship, and who did not have any employees. The PPP loan application for a self-employed individual or sole proprietorship required such an individual to certify the individual's annual income or net profit, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year and to provide documentation showing

3

the individual's annual income or net profit.

12.     PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

13.     The proceeds of a PPP loan could be used for certain permissible expenses, such as payroll costs, mortgage interest payments, rent, and utilities for the business. The PPP loan application required borrowers to certify that all loan proceeds would be used only for such permissible expenses.

14.     To obtain forgiveness of a PPP loan, a borrower had to submit a PPP loan forgiveness application. In the forgiveness application, a borrower had to certify that the loan proceeds had been spent on payroll costs and other permitted expenses. Once approved for forgiveness, a borrower would owe nothing and would have no obligation to repay the PPP loan.

15.     Borrowers who received a PPP loan were, in certain circumstances, permitted to apply for a second PPP loan, referred to as a "Second Draw" PPP loan. In the application for a Second Draw PPP loan, a borrower had to also certify that he or she had used the first PPP loan only for permitted expenses. A borrower was also required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

16.     Bank Star, Busey Bank, Chase Bank, National Development Council ("NDC"), Midwest BankCentre, Justine Petersen, Regions Bank, Simmons Bank, and U.S. Bank were third-party participating lenders in the PPP.

**The Economic Injury Disaster Loan Program**

17.     The Economic Injury Disaster Loan Program ("EIDL") was a program

4

administered by the Small Business Administration ("SBA") that provided low-interest financing to small businesses, renters, and homeowners in regions affected by federally declared disasters. The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

18. To obtain an EIDL loan, a qualifying business was required to submit to the SBA an application, which was signed by an authorized representative of the business. On the application, the business (through its authorized representative) was required to provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. For COVID-19 relief EIDL loans, the 12-month period ran from January 31, 2019, to January 31, 2020. A COVID-19 relief EIDL loan applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

19. In addition to EIDL loans themselves, businesses could request and receive a cash advance grant up to $10,000, the exact amount based on the number of employees claimed in the application. This cash advance grant was not required to be repaid.

20. EIDL loan applications were submitted directly to the SBA via an online portal, hosted on computer servers located in the states of Virginia, Iowa, and Washington. If an EIDL loan application or cash advance request was approved, EIDL funds were issued directly by the SBA.

21. The proceeds of an EIDL loan could be used for certain specified expenses, such as payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

5

## COUNTS 1–12
### Wire Fraud (18 U.S.C. § 1343)

22.     The above allegations are realleged and incorporated by reference as if fully set forth herein.

### Scheme to Defraud

23.     Beginning no later than in or around May 2020, and continuing until through at least in or around October 2021, in the Eastern District of Missouri and elsewhere, the defendant,

### NACOLE M. TAYLOR,

with intent to defraud, devised and intended to devise a scheme and artifice to defraud third-party participating lenders in the PPP and the SBA, and to obtain money and property from those lenders and the SBA by means of materially false and fraudulent pretenses, representations, and promises, by submitting fraudulent applications for PPP loans and for EIDL loans and cash advances.

### Manner and Means

#### *TAYLOR's Fraudulent PPP Loan Applications*

24.     It was part of the scheme that TAYLOR submitted and caused to be submitted fraudulent sole-proprietor PPP loan applications on behalf of business entities registered in her name to third-party participating lenders in the PPP, with the intent to obtain loan proceeds from those lenders.

25.     It was further part of the scheme that TAYLOR, on the fraudulent PPP loan applications, falsely represented the business entity's average monthly payroll and annual income in 2019, for the purpose of inflating the amount of PPP loan TAYLOR could receive.  In truth and fact, the business entity had substantially less, if any, monthly payroll and annual income in 2019, and numerous business entities for which TAYLOR applied for a PPP loan had no operations at all.

26.    It was further part of the scheme that TAYLOR falsely claimed on the fraudulent PPP loan applications that she was not an owner of any other business and did not have common management with any other business.  In truth and fact, TAYLOR had multiple business entities registered in her name, including business entities for which she also submitted PPP loan applications.

27.    It was further part of the scheme that TAYLOR submitted and caused to be submitted with the fraudulent PPP loan applications fraudulent tax returns, including IRS Form 1040, Schedule C (Profit or Loss from Business).  The tax returns purported to have been prepared by TAYLOR's tax preparation business and to have been filed by TAYLOR and falsely represented the business entity's annual income in 2019.  In truth and fact, the tax returns and Schedule Cs were falsified, TAYLOR did not file the tax returns with the IRS, and TAYLOR did not earn that amount of money from the business entity in 2019.

28.    It was further part of the scheme that, as a result of the false and fraudulent representations in these PPP loan applications, TAYLOR caused the third-party participating PPP lenders to approve her PPP loan applications.

29.    It was further part of the scheme that TAYLOR, shortly before the submission of the fraudulent PPP loan applications, opened and caused to be opened bank accounts in the name of the business entities, for the purpose of receiving fraudulently obtained PPP loan funds.

30.    It was further part of the scheme that TAYLOR caused the third-party participating lenders to disburse loan proceeds into bank accounts in the name of the business entity, for which TAYLOR was the owner and signatory.

31.    It was further part of the scheme that TAYLOR spent the PPP loan proceeds on personal expenses, including purchases of merchandise from Louis Vuitton, Gucci, Vincent's

Jewelers, Fendi, and Nordstrom.

32.    It was further part of the scheme that TAYLOR submitted and caused to be submitted fraudulent applications for PPP loan forgiveness.

33.    It was further part of the scheme that TAYLOR falsely represented on the fraudulent forgiveness applications that TAYLOR had spent all of the PPP loan proceeds on payroll costs.

34.    It was further part of the scheme that, as a result of the false and fraudulent representations in these forgiveness applications, the SBA forgave most, if not all, of the PPP loans for TAYLOR.

35.    It was further part of the scheme TAYLOR fraudulently obtained at least approximately $255,000 in PPP loans from third-party participating lenders, most of which were fully forgiven, including the PPP loans associated with the fraudulent PPP loan applications listed in the table below:

| Approx. Date of Loan Application | Applicant | Lender | Approx. Loan Amount |
|---|---|---|---|
| May 27, 2020 | 4th Generation | Bank Star | $10,200 |
| June 8, 2020 | A&N Logistics | Bank Star | $12,200 |
| June 17, 2020 | Friends are Forever | Justine Petersen | $19,816 |
| June 23, 2020 | Avail Construction | NDC | $20,833 |
| June 30, 2020 | Angelic Medical Staffing | Busey Bank | $20,800 |
| June 30, 2020 | Accurate Tax | Midwest BankCentre | $16,732 |
| January 15, 2021 | A&N Logistics | Bank Star | $9,210 |
| January 15, 2021 | 4th Generation | Bank Star | $7,759 |
| January 22, 2021 | Perpetual Investment Group | Simmons Bank | $19,491 |
| February 4, 2021 | Accurate Tax | Midwest BankCentre | $16,732 |
| February 7, 2021 | Friends are Forever | Chase Bank | $20,122 |
| February 8, 2021 | Angelic Medical Staffing | Busey Bank | $20,832 |
| February 18, 2021 | Nacole Taylor | U.S. Bank | $18,722 |
| April 8, 2021 | Avail Construction | NDC | $20,833 |
| May 3, 2021 | SquareOne Investment | Regions Bank | $20,832 |

*Fraudulent PPP Loan and EIDL Loan Applications for Other Individuals*

36.    It was part of the scheme that TAYLOR submitted and caused to be submitted

8

fraudulent PPP loan applications and EIDL loan applications on behalf of business entities registered in other individuals' names, for the purpose of obtaining pandemic relief funds from third-party participating lenders in the PPP and the SBA.

37.    It was further part of the scheme that TAYLOR offered to submit applications for pandemic relief funds for other individuals in exchange for those individuals paying TAYLOR a portion of the funds obtained as a result of the applications. TAYLOR offered to submit such applications for, among others, clients of her tax preparation business. The co-conspirators who accepted TAYLOR's offer and allowed TAYLOR to submit applications in their names and on behalf of their businesses included A.L. and L.G.

38.    It was further part of the scheme that these co-conspirators provided TAYLOR with their personal and business information, to be used by TAYLOR to submit the applications for pandemic relief funds. If the co-conspirator already had a business entity registered in his or her name, TAYLOR submitted the fraudulent application in the name of this pre-existing business. If the co-conspirator did not have a registered business, TAYLOR created a fictitious business, registered the business entity with the Missouri Secretary of State, and listed the co-conspirator as the registered agent.

39.    It was further part of the scheme that TAYLOR, on the fraudulent PPP loan applications, falsely represented the business entity's average monthly payroll and annual income in 2019. In truth and fact, TAYLOR fabricated these figures and knew the business entity had substantially less, if any, monthly payroll and annual income in 2019.

40.    It was further part of the scheme that TAYLOR submitted and caused to be submitted with the fraudulent PPP loan applications fraudulent tax returns, including IRS Form 1040, Schedule C (Profit or Loss from Business). The tax returns purported to have been filed by

the co-conspirator and reported annual income from the business entity in 2019.  In truth and fact, TAYLOR falsified the tax returns and Schedule Cs, the tax returns were not filed with the IRS, and TAYLOR knew the co-conspirator did not earn that amount of money from the business entity in 2019.

41.    It was further part of the scheme that, as a result of the false and fraudulent representations in these PPP loan applications, TAYLOR caused the third-party participating PPP lenders to approve the loan applications and disburse loan proceeds into the co-conspirators' bank accounts.

42.    It was further part of the scheme that TAYLOR, on the fraudulent EIDL loan applications, falsely represented the business entity's gross revenue and number of employees in the 12 months prior the pandemic.  In truth and fact, TAYLOR fabricated these figures and knew the business entity had substantially less, if any, revenue and employees in the 12 months prior to the pandemic.

43.    It was further part of the scheme that, as a result of the false and fraudulent representations in these EIDL applications, TAYLOR caused the SBA to approve the loan applications and disburse EIDL funds into the co-conspirators' bank accounts.

44.    It was further part of the scheme that TAYLOR, after the pandemic relief funds were disbursed, directed the co-conspirators to pay TAYLOR a portion of the funds as payment for TAYLOR submitting the fraudulent applications.  The amount that TAYLOR demanded varied by co-conspirator, and the amounts ranged from approximately 20 to 33 percent of the proceeds. TAYLOR directed the co-conspirators to pay her in various ways, including via check.  After the co-conspirators paid TAYLOR as directed, and knowing that the payments constituted fraudulently obtained pandemic relief funds, TAYLOR deposited the payments in one of her bank

accounts.

45.    It was further part of the scheme TAYLOR fraudulently obtained at least approximately $432,000 in pandemic relief funds for co-conspirators, including the PPP loans and EIDL loans associated with the fraudulent applications listed in the table below:

| Approx. Date of Loan Application | Applicant | Co-Conspirator | PPP or EIDL | Approx. Loan Amount |
|---|---|---|---|---|
| May 19, 2020 | Logo Fitness | L.G. | PPP | $12,074 |
| May 20, 2020 | Elite 50 | L.G. | PPP | $95,000 |
| June 19, 2020 | Logo Fitness | L.G. | EIDL | $48,300 |
| June 22, 2020 | Elite 50 | L.G. | EIDL | $117,400 |
| July 1, 2020 | Black Sheep Outfitters | A.L. | EIDL | $160,000 |

### Wirings in Furtherance of Scheme

46.    On or about the dates set forth below, in the Eastern District of Missouri and elsewhere, the defendant,

### NACOLE M. TAYLOR,

having devised and intended to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approx. Date | Wire Description |
|---|---|---|
| 1 | June 8, 2020 | A wire communication from Bank Star located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for A&N Logistics in the amount of approximately $12,200. |
| 2 | June 17, 2020 | A wire communication from Justine Petersen located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for Friends are Forever in the amount of approximately $19,816. |

11

| 3 | June 29, 2020 | A wire communication from NDC located outside the state of Missouri to the Eastern District of Missouri, consisting of the disbursement of PPP loan funds for Avail Construction in the amount of approximately $20,833 to Regions Bank account ending in -x9849 in the name of 4th Generation. |
| 4 | June 30, 2020 | A wire communication from Midwest BankCentre located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for Accurate Tax in the amount of approximately $16,732. |
| 5 | January 15, 2021 | A wire communication from Bank Star located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for A&N Logistics in the amount of approximately $9,210. |
| 6 | February 4, 2021 | A wire communication from Midwest BankCentre located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for Accurate Tax in the amount of approximately $16,732. |
| 7 | April 8, 2021 | A wire communication from NDC located outside the state of Missouri to the Eastern District of Missouri, consisting of the disbursement of PPP loan funds for Avail Construction in the amount of approximately $20,833 to Regions Bank account ending in -x9849 in the name of 4th Generation. |
| 8 | May 19, 2020 | A wire communication from Justine Petersen located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for Logo Fitness in the amount of approximately $12,074. |
| 9 | May 20, 2020 | A wire communication from Bank Star located in the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a PPP loan application submitted for Elite 50 in the amount of approximately $95,000. |
| 10 | June 19, 2020 | A wire communication from the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a EIDL loan application submitted for Logo Fitness. |
| 11 | June 22, 2020 | A wire communication from the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a EIDL loan application submitted for Elite 50. |
| 12 | July 1, 2020 | A wire communication from the Eastern District of Missouri to SBA servers located outside the state of Missouri, consisting of a EIDL loan application submitted for Black Sheep Outfitters. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 13
### Unlawful Monetary Transaction (18 U.S.C. § 1957)

47.    The above allegations are realleged and incorporated by reference as if fully set

forth herein.

48.    On or about July 24, 2020, in the Eastern District of Missouri, the defendant,

**NACOLE M. TAYLOR,**

knowingly engaged, attempted to engage, and caused another to engage in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of a cashier's check in the amount of $50,000 from A.L. into Regions Bank account ending in -x3974 in the name of A&N Logistics, such property having been derived from specified unlawful activity, that is wire fraud, as alleged in Count 12.

In violation of Title 18, United States Code, Section 1957.

**<u>FORFEITURE ALLEGATION</u>**

The Grand Jury further finds by probable cause that:

1.    Pursuant to Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts 1 through 12, the Defendant(s) shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation(s).

2.    Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as set forth in Count 13, the Defendant(s) shall forfeit to the United States of America any property, real or personal, involved in such offense, or any property traceable to such property.  Subject to forfeiture is a sum of money equal to the total value of property, real or personal, involved in such offense, or any property

13

traceable to such property.

3.     If any of the property described above, as a result of any act or omission of the Defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without

difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

MATTHEW T. DRAKE
Acting United States Attorney

_____
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney